UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| United States of America | Criminal No. 3:06cr160 (JBA) |
|---|---|
| v. | August 13, 2010 |
| Azibo Aquart and Azikiwe Aquart | |

RULING ON MOTIONS FOR SEVERANCE

Defendants Azikiwe [Doc. # 324] and Azibo [Doc. # 316] Aquart both seek to sever their trials and proceed independently of one another. In addition, Azikiwe moves to sever [Doc. # 321] Count Nine of the Third Superseding Indictment, and Azibo moves to sever [Doc. # 325] Count Ten of the operative Indictment.[1] For the reasons that follow, the motions to sever parties are denied, and the motions to sever counts are granted.

I.  Background

In the Fourth Superseding Indictment (the "Indictment"), Defendants Azikiwe and Azibo Aquart, who are brothers, are charged with conspiracy to murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count One); the murders of Tina Johnson, James Reid, and Basil Williams in aid of racketeering, in violation of 18 U.S.C. §§ 2 and 1959(a)(1) (Counts Two, Three, and Four); the drug–related murders of Tina Johnson, James Reid, and Basil Williams, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 848(e)(1)(A) (Counts Five, Six, and Seven); and conspiracy to possess with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and 846

---

[1] Defendants' motions are directed at the Third Superseding Indictment [Doc. # 255[. The Government has since filed a Fourth Superseding Indictment [Doc. # 361]; there is no material difference for purpose of Defendants' motions, and the Court will therefore refer to the operative Fourth Superseding Indictment.

(Count Eight). Azikiwe is charged in Count Nine of the Indictment with possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and Azibo is charged in Count Ten of the Indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). The Government seeks the death penalty for both Defendants on the death–eligible counts and urges that one trial be held for both Defendants on all counts.

II.     Severance of Defendants

   A.     Legal Standard

Rule 14(a)(1) of the Federal Rules of Criminal Procedure provides that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." When co-defendants have been indicted together, "there is a preference in the federal system for joint trials" because they "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (internal quotations omitted). Even when a joint trial would cause prejudice, severance is not required; rather, Rule 14 "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538. Severance is only appropriate when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

Given the presumption in favor of joinder, the Second Circuit has held that a defendant must establish a risk of prejudice that is "sufficiently severe to outweigh the judicial

economy that would be realized by avoiding multiple lengthy trials." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998). Among the factors to be weighed to determine prejudice are

> (1) the number of defendants and the number of counts; (2) the complexity of the indictment; (3) the estimated length of the trial; (4) disparities in the degrees of involvement by defendants in the overall scheme; (5) possible conflict between various defense theories; and (6) prejudice resulting from evidence admissible as to some defendants, but not others.

*United States v. Ramos*, 346 F. Supp. 2d 567, 570 (S.D.N.Y. 2004) (citing *United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1987)). While "none of these factors is dispositive, each is intended to provide guidance as to whether a jury will be capable of considering the evidence as to each defendant separately, independent of evidence against co-defendants." *Ramos*, 346 F. Supp. 2d at 570 (citing *Gallo*, 668 F. Supp. at 749).

There is a heightened need to consider the possibility of prejudice arising from joint trials in capital cases. *United States v. Perez*, 199 F. Supp. 2d 38, 44 (D. Conn. 2004); *see also United States v. Lecco*, No. 2:05–00107–01, 2009 U.S. Dist. LEXIS 79799, *8 (S.D. W.Va. Sept. 3, 2009) (noting "special impact presented by the capital nature of this prosecution"); However, the capital nature of a case alone does not compel severance. *See, e.g., United States v. Taylor*, 293 F. Supp. 2d 884, 891 (N.D. Ind. 2003) (denying severance of guilt–phase trial to defendants facing a joint trial against whom the Government sought death penalty, because those defendants failed to demonstrate the existence of mutually antagonistic defenses or prejudicial spillover that would justify severance of the guilt phase of the trial).

B. Discussion

*1. Prejudicial Spillover*

Both Defendants argue that the trial should be severed because of the possibility of prejudicial "spillover" of evidence. The "typical spillover claim is that evidence admissible against only one defendant is prejudicial to all defendants" and that individual trials would avoid that prejudice. *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992).[2] The only prejudicial evidence either Defendant specifically points to as both potentially admissible in a joint trial and prejudicial is Azibo's criminal history, which Azikiwe would seek to introduce under Federal Rule of Evidence 806[3] to attack the credibility of Azibo as the declarant of post–arrest statements that Defendants expect the Government to offer. Defendants maintain that Azibo's prior convictions could be offered by Azikiwe to impeach Azibo's

---

[2] *DiNome* concluded that there was no prejudicial spillover in the prosecution of seven of nine co–defendants charged with conspiracy and racketeering violations because "the evidence in question is relevant to the RICO charges against all defendants and most probably would have been admitted even if defendants had been accorded individual trials." *Id.* at 844. However, two co–defendants charged with mail and wire fraud, and not charged with RICO violations, were prejudiced by evidence against their co–defendants "including vicious murders, loansharking, auto theft, pornography, and firearms trafficking," which was "irrelevant" to the charges against them. *Id.*

[3] Rule 806 provides that "[w]hen a hearsay statement, or a statement defined in [Federal] Rule [of Evidence] 801(d)(2)(C), (D) or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked, may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness."

credibility as to co–conspirator statements in a separate trial of Azikiwe,[4] but would not be admissible in a separate trial of Azibo, except to prove the felon–in–possession count.

The post–arrest statements identified in support of Defendants' spillover claim are Azibo's statements that he had "nothing to do with the murders"; that he knew the residents—including victim Tina Johnson—of the apartment in which the murders were committed; that he was once in that apartment to give Tina five dollars; that he knew the victims were selling drugs from that apartment; and that he was "involved with drugs being sold out of the building at one time in the past." (Gov't's Resp. at 24–25.) Because these statements were not made by Azibo during the course of and in furtherance of the conspiracy, the Government intends to offer Azibo's statements under Rule 801(d)(2)(A) as admissions of a party–opponent.[5]

---

[4] If Azibo and Azikiwe were tried separately, Azibo would not be a party–opponent in Azikiwe's trial, and the statements at issue would not be admissible under Rule 801(d)(2)(A), nor would they be admissible as statements made in furtherance of a conspiracy, as the Government acknowledges. Therefore, Azibo's criminal history would be inadmissible under Rule 806 in a separate trial for Azikiwe.

[5] Although Rule 806 does not explicitly refer to Rule 801(d)(2)(A), the Senate Judiciary Committee report on the proposed rules of evidence stated that "[t]he committee considered it unnecessary to include statements contained in Rule 801(d)(2)(A) and (B)—the statement by the party–opponent himself or the statement of which he has manifested his adoption—because the credibility of the party–opponent is always subject to an attack on his credibility." S. Rep. No. 1277, 93d Cong., 2d Sess. (1974). As such, courts have applied Rule 806 to permit impeachment of party–opponents who make statements admitted under Rule 801(d)(2)(A) even if they do not testify. *See, e.g.*, *United States v. Shay*, 57 F.3d 126, 128 (1st Cir. 1995) (rejecting the Government's argument that testimony cannot be used to attack reliability of a non–testifying defendant's out–of–court statements admitted under Rule 801(d)(2)(A)); *United States v. Botti*, No. 3:08cr230(CSH), 2010 WL 745043, *2 (D. Conn. Feb. 23, 2010) (holding that defendant was permitted to introduce evidence undermining his own credibility by cross examining government witnesses and calling his own witnesses on his propensity "to exaggeration and overstatement" following

In support of their argument that Azibo's statements warrant severance, Defendants rely on *Perez*, 299 F. Supp. 2d at 42, in which severance was granted for capital co–defendants who, if tried together, would have faced "an impossible dilemma" because the Government intended to introduce out–of–court statements defendant Gonzalez made in furtherance of a conspiracy that implicated defendant Perez, and Perez then would seek to introduce Gonzalez's otherwise–inadmissible criminal history to impeach Gonzalez's statements. The dilemma in *Perez* arose because "'either Mr. Gonzalez's right to a fair trial [would be] prejudiced because the jury hears otherwise impermissible and unfairly prejudicial evidence against him, or Mr. Perez's rights [would be] compromised because of his inability to fully challenge the credibility of the declarant.'" *Id.* at 42.

Although statements made by party–opponents and admitted under Rule 801(d)(2)(A) may be subject to impeachment under Rule 806, the proffered statements by Azibo would not be offered to establish the existence of a conspiracy and may be irrelevant to Azikiwe's liability in the alleged conspiracy. Therefore, based on the record currently before the Court, Azikiwe does not face the dilemma in *Perez*, since impeachment of Azibo's credibility as to his out–of–court statements by use of his criminal history may have little significance, if any, for Azikiwe's liability, in which case it would be unlikely to survive Rule 403's probative–prejudicial balancing. The Advisory Committee's Note on Rule 806 explains that "[t]he declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment and support as though he had in fact testified. See Rules 608 and 609," *see United States v. Friedman*, 854 F.2d 535, 569 (2d Cir. 1988), and Rule 609(a)(1) provides that "evidence that an accused has been

---

admission of his statements under Rule 801(d)(2)(A)).

6

convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused" under Rule 403. Because whether impeaching the truthfulness of Azibo's post–arrest statements by his felony record is probative of Azikiwe's *non*–culpability remains unclear at this time, while it would be highly prejudicial to Azibo such that a Rule 403 balancing may not justify its admissibility in a joint trial, at this stage Azikiwe's impeachment interests related to Azibo's post–arrest statements—which neither reference Azikiwe nor establish the existence of the alleged conspiracy—do not justify severance.[6]

Azibo and Azikiwe also contend that they will suffer "prejudicial spillover" because they are biological brothers who look alike, share similar and uncommon first and last names, are both members of a small Rastafarian sect, and both share a common Jamaican heritage,

---

[6] The Government also represented at oral argument that one of its witnesses will testify about his discussion with Azibo in Azikiwe's presence, during which "Azibo talks about the fact that a woman in the building is stealing money from him, in other words selling drugs on his territory, and he wants [the witness's] assistance to deal with [that woman]." (Oral Arg. Tr. at 55:19–56:2.) Defendants have expressed no concern about this specific statement in their briefing or at oral argument. Nonetheless, while this alleged statement by Azibo may have implications for Azikiwe's role in the conspiracy, Azibo's criminal history would likely be inadmissible to impeach his credibility as its declarant in a joint trial or in separate trials. Azibo's statement at–issue contains both Azibo's stated belief that a woman was selling crack "on his territory," and his command that the witness "deal with" her. Neither component of Azibo's statement would be offered for the truth of the matter asserted. "Statements offered as evidence of commands or threats or rules directed to the witness" are not offered for the truth of the matter asserted therein and are not hearsay. *United States v. Bellomo*, 176 F.3d 580, 586 (2d Cir. 1999). Moreover, criminal history is admissible under Rule 609 only insofar as it "bear[s] on [a witness's] propensity to testify truthfully." H.R. Conf. Rep. No. 93-1597, 2d Sess., at 9 (1974), reprinted in 1974 U.S.C.C.A.N. 7098, 7103; *see United States v. Estrada*, 430 F.3d 606, 616 n.3 (2d Cir. 2005). Because Azibo's statement is not offered for the truth of the matter asserted and requires no determination as to Azibo's character for truthfulness, any criminal history of Azibo that Azikiwe would seek to offer would likely be irrelevant and inadmissible.

7

and therefore, the jury will unavoidably confuse them and conflate evidence of their respective conduct. Specifically, Azikiwe suggests that because jurors will see him and Azibo as different from themselves, yet like each other and "tightly bound to each other by birth, national origin, religion, and appearance, the jurors may infer that the brothers' actions . . . are also similar notwithstanding differences in the proof against them" (Azikiwe Mot. Sev. at 7) and the different roles they allegedly played in the conspiracy.

Although Defendants do share some physical characteristics and a common last name, the liability phase is expected to take three weeks, and so the jurors will have ample opportunity to effectuate the instructions—which the Court will give at the beginning and end of trial—to make separate determinations of what has been proved against each "defendant separately from the evidence presented against other defendants," which should be sufficient to mitigate potential prejudicial spillover. *United States v. Diaz*, 176 F. 3d 52, 103 (2d Cir. 1999) (citing *United States v. Carson*, 702 F.2d 351, 367 (2d Cir. 1983) ("a judge's instructions to the jury to assess each defendant separately supports a finding of no spillover prejudice.")). To rectify any confusion, from the outset, Azibo and Azikiwe, as well as all counsel, can each sit behind name placards during trial.

Given that an instructed jury will have ample means and opportunity to distinguish between Defendants and that Defendants point to no specific evidence that would be admissible in a joint trial against only one Defendant but prejudicial to the other, potential prejudicial spillover does not appear to warrant severance.

## 2. *Mutually Antagonistic Defenses*

### i. Guilt phase

Azibo and Azikiwe also each contend that severance is necessary because they will employ mutually antagonistic defenses at trial, in effect implicating one another, by focusing respectively on Azikiwe being the older brother and Azibo's role as the head of the alleged Aquart criminal organization, the "Aquart Enterprise." At oral argument, counsel for Azikiwe characterized his client's (moral) dilemma as being "put in the position at a joint trial of either helping the government try to kill his brother or letting himself risk being killed by not defending the case the best way possible because the fact is the best way possible for him to defend this case is to accuse his brother . . . through the totality of the evidence." (Tr. at 36:19–37:1.) To defend Azikiwe most effectively, his counsel will have to cross–examine witnesses familiar with the Aquart Enterprise about Azibo Aquart's leadership role in the organization; "on the fact, if it turns out to be true, that he planned these murders"; and "on the fact that he has a record of beating people and striking people." (Tr. at 37:15–22.) Azibo's counsel maintains that the potential for their respective defenses to be antagonistic is exacerbated by the current absence of any potential witness who is "going to testify as to what happened inside" the room in which the murders were committed (*id.* at 30:19–21), in light of which the role that DNA evidence plays becomes more critical. Five DNA samples were recovered from Tina Johnson's apartment; four samples could implicate either brother, and one strongly implicates Azibo but excludes Azikiwe.[7] Each Defendant predicts that his

---

[7] The Government's DNA evidence includes (1) swabbings containing DNA mixtures from duct tape recovered from the hands of victim Tina Johnson, which exclude neither Azibo nor Azikiwe as potential contributors (within the African–American population, one in 140 is estimated to fit within this potential pool); (2) two separate swabbings containing

co–Defendant will try to discredit the Government's DNA evidence as to him by arguing that his brother is the source, thus requiring the other brother to mount a similar defense in rebuttal. Azibo expects that Azikiwe will emphasize the DNA sample that heavily implicates Azibo and excludes him.

While the Defendants' potentially competing strategies—emphasizing one another's respective familial roles and roles in the alleged criminal organization and focusing on indicia that the other Defendant is the source of DNA—may contradict and cast blame on one another, those defenses do not amount to mutually antagonistic defenses, as that concept has been defined by the Second Circuit. Defenses are only sufficiently "mutually antagonistic" to justify severance when "accepting one defense 'requires that the jury must *of necessity* convict a second defendant.'" *United States v. Yousef*, 327 F.3d 56, 151 (2d Cir. 2003) (quoting *United States v. Cardascia*, 951 F.2d 474, 484 (2d Cir. 2003)) (emphasis in *Yousef*); *see also Zafiro*, 506 U.S. at 538 (describing mutually antagonistic defenses as being "irreconcilable").

---

DNA mixtures from latex gloves that were found in the southwest bedroom in close proximity to two of the victims' bodies, which included Azibo and Azikiwe as potential contributors (within the African–American population, one in 400 is estimated to fit within this potential pool); (3) a swabbing containing DNA mixtures from a nylon stocking found in one of the bedrooms, which included Azikiwe as a potential contributor (within the African–American population, one in 1,000 is estimated to fit within this potential pool) and Azibo is not excluded as a potential contributor (within the African–American population, one in 220 is estimated to fit within this potential pool); (4) a swabbing containing a DNA mixture from a latex glove found in another bedroom where one victim's body was recovered, where Azibo and Azikiwe cannot be eliminated as minor contributors (within the African–American population, one in 180 is estimated to fit with Azibo and one in 80 is estimated to fit with Azikiwe); and (5) a DNA mixture from a swabbing of a fragment of a latex glove found in the living room of the apartment, which include Azibo as a potential contributor (within the African–American population, one in 79 million is estimated to fit within this potential pool).

In *United States v. Salameh*, the Second Circuit determined that defendants did not employ mutually antagonist defenses when, during summation, defendant Salameh's counsel abandoned his trial strategy of disputing that a bomb had caused the explosion at issue and instead argued that Salameh was "nothing more than an unwitting dupe of [defendant] Yousef, who had masterminded the bombing," even though the other defendants, including Abouhalima, continued to maintain that the bomb was not responsible for the explosion. 152 F.3d 88, 116 (2d Cir. 1998). Because "Salameh and Abouhalima both claimed to be innocent of the charges and neither's claim of innocence required the jury to find the other guilty," the defenses were not mutually antagonistic. *Id.* In *In re Terrorist Bombings of United States Embassies in East Africa*, 552 F.3d 93, 132 (2d Cir. 2008), the Second Circuit determined that defenses were not mutually antagonistic and did not require severance, where death–eligible defendants otherwise unaffiliated with al Qaeda attempted at trial to rationalize the targeting of the American embassies and elicited evidence about the violent nature of al Qaeda's aims in an effort to emphasize their lesser culpability, in contrast to non–death–eligible defendant El–Hage, who testified that bombing the embassies was "unjustifiable on any ground" but also explained that he had associated with al Qaeda members without being aware of al Qaeda's "violent and/or anti–American agenda." These defenses were not mutually antagonistic because there was "no conflict between El–Hage's rejection of the objective of the embassy bombings and his codefendants' attempts to justify the bombings, or between El–Hage's claim of ignorance about al Qaeda's activities and his co–defendants' emphasis that al Qaeda "did not hesitate to engage in conduct that would kill the maximum number of victims, regardless of the civilian casualties suffered as a result." *Id.*

By contrast, in *United States v. Serpoosh*, 919 F.2d 835 (2d Cir. 1990), defenses were deemed mutually antagonistic where an undercover buy of narcotics was arranged, and the two defendants in a black Buick in which the buy took place each testified with highly contradictory stories at trial, each claiming to be an "unknowing dupe" of the other and accusing the other of being the heroin–trafficker, such that "at least one of the two men in the black Buick must have been participating in a conspiracy to sell heroin." *Id.* at 837. Similarly, in *United States v. Green*, 324 F. Supp. 2d 311, 324–25 (D. Mass. 2004), severance was granted in a death–penalty case for co–defendants charged with murdering a victim who died from a single gunshot wound. The court reasoned that each defendant would attempt to lay the blame on the other for the single fatal bullet, creating a "zero sum game," in which the jury could not rationally acquit both. What may distinguish *Salameh* and *In re Terrorist Bombings* from *Serpoosh* and *Green* is that in the former two cases, the jury could have acquitted any number of defendants despite their contradictory defenses, while in the latter, the defenses mounted required the conviction of at least one defendant.

Even if Azibo and Azikiwe emphasize the other's culpability, highlighting DNA evidence, familial relations, or roles in the Aquart Enterprise, those anticipated defenses do not require the jury to acquit one and convict the other. A jury could determine that the crime–scene DNA implicates either, neither, or both defendants. Azikiwe's evidence that Azibo was the leader of the Aquart Enterprise, was more involved in its criminal operations, and had violent tendencies does not necessarily require Azibo's conviction if Azikiwe is acquitted. The brothers believe that as of now, no witness will testify definitively as to what happened in the room where the victims were found, so unlike *Serpoosh*, neither Defendant will testify as to having witnessed the other commit the crimes charged; they will both plead

12

innocence and seek to generate doubt, including by advancing other explanations as to what may have happened. And unlike in *Green*—in which ballistics evidence implied there was only one shooter, and each defendant was expected to testify that the other defendant was that shooter—in this case there could have been more than one murderer because there were three victims, and they were beaten to death. In fact, the Government represents that it intends to introduce other evidence that implicates both brothers at the crime scene, so that despite the depiction of Azibo as the leader and mastermind of the criminal enterprise, Azikiwe could still be convicted as a criminal participant.

In sum, Azibo and Azikiwe anticipate engaging in blame–shifting and fingerpointing, which does not constitute mutually antagonistic defenses. *United States v. Casamento*, 887 F. 2d 1141, 1153–54 (2d Cir. 1989), *cert. denied*, 493 U.S. 1081 (1990) ("Mere 'fingerpointing' does not require severance."); *see also United States v. Villegas*, 899 F.2d 1324, 1346 (2d Cir. 1990) ("The mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance.") (citing *Casamento*, 887 F.2d at 1154). Therefore, their motions to sever liability will be denied.

ii. Penalty phase

Defendants also argue that conflicting mitigation defenses will arise if there is a penalty phase, which will deprive each of the individualized determination to which he is entitled. Azibo fears that Azikiwe will argue as mitigation that he is less culpable than Azibo. Under 18 U.S.C. § 3592(a)(3) it is a mitigating factor if "[t]he defendant is punishable as a principal in the offense, which was committed by another, but the defendant's participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge." Azibo reasons that "[i]f the jury were to find that Azikiwe is a minor

participant and therefore not deserving of death, then the opposite must be true for Azibo Aquart: he is a major participant and therefore more deserving of death." (Azibo Mot. Sev. at 11.)

Under the Eighth Amendment, a capital defendant is entitled to an "*individualized* determination" of his penalty, based on his character "and the circumstances of the crime" *Zant v. Stephens*, 462 U.S. 862, 879 (1983) (emphasis in original, internal citations omitted), because "[i]n assuring that only those most deserving of a capital sentence actually receive it, society benefits from allowing a defendant to make the best case in mitigation possible to a fact finder who has under consideration that defendant alone." *Lecco*, 2009 U.S. Dist. LEXIS 79799 at *11. In *Green*, 324 F. Supp. 2d at 326, the court, granting severance, observed the potential for each defendant to "argue for mitigation by shifting blame to the other, or by arguing that they are not as worthy of death as their codefendant," where one defendant could blame his youthful criminal conduct on the older and more mature co–defendant.

However, even if severance is not required for the liability trial, the individualized determination objective can be largely achieved by holding sequential, separate penalty trials for each defendant. In *United States v. Catalan–Roman*, 376 F. Supp. 2d 96, 107 (D. P.R. 2005), the court denied severance for the guilt phase of the trial but granted severance for the penalty phase because one defendant's mitigation defense consisted of substantial evidence of his remorse and religiousness, while the Government intended to press the other defendant's lack of remorse as an aggravator. The court explained that "[t]he risk that the 'loser' in the jury's final equation received a death sentence while the other was spared, was unacceptable." *Id.* at 108.

Here, if a joint penalty trial were held, Azibo could be at risk that the jury's conclusion of Azikiwe's lesser culpability, based on his not being the leader of the Aquart Enterprise, could support a jury's conclusion that Azibo is comparatively *more* deserving of the death penalty. Further, since both Defendants plan to call family members to describe each brother's respective but different positive traits, they worry that as a result the jury may discredit all such testimony, or may conclude that the absence of similar testimony for the other means that those positive attributes are missing in him. All counsel agreed at oral argument that Azibo is at greater risk of being deemed deserving of death from unfavorable comparisons between the two co–Defendants. This risk will be largely mitigated by holding separate penalty trials, with Azibo's to be held first. He then will receive a fully individualized penalty trial without comparison to Azikiwe.[8] While Azikiwe's attorneys worry that Azibo's penalty trial will set a course over which they have no control, to their client's detriment, this is amorphous speculation and the Court is satisfied that sequential penalty trials—to which the Government has no objection—will adequately protect each Defendant's interests in individualized determinations. Azikiwe is not prejudiced by his second–in–time position: if the jury imposes the death penalty on Azibo, the more culpable, sparing the less culpable

---

[8] Azikiwe's counsel expressed concern at oral argument that overlapping mitigation witnesses may be unavailable or unwilling to testify a second time or that as repeat witnesses, they may not be credited the second time. However, the logistical problem of witness unavailability would exist even if there were two separate trials. Given that those witnesses presumably will be describing different aspects of a different person, and with repeated instructions on the required individualized consideration, a wholly separate trial does not seem warranted.

would seem more likely. If the death penalty was not imposed on Azibo, the likelihood of a similar outcome for Azikiwe would seem high.[9]

III. Severance of Count Nine

Azikiwe moves to sever Count Nine of the Indictment, in which he is charged with possession with intent to distribute cocaine base. Azikiwe argues that introduction of evidence of drugs seized from him nine months after the charged conspiracy ended will cause him "extreme" prejudice because this is the only evidence of drugs that would be introduced against him, and "the [G]overnment's pursuit of the death penalty against Defendant [Azikiwe] Aquart is based on his alleged participation in the drug conspiracy." (Azikiwe's Mot. Sever Count Nine [Doc. # 321] at 2.) The Government responds that joinder of Count Nine was proper under Federal Rule of Criminal Procedure 8(a)[10] and the admission of the drugs seized on May 24, 2006 to prove Count Nine would not be unduly prejudicial because it would be admissible as Federal Rule of Evidence 404(b) bad–acts evidence, even if Count Nine were severed.

---

[9] Defense counsel alternatively proposes a two–jury trial in which the guilt–phase evidence is jointly presented but the guilt and penalty determinations are made by entirely separate juries. While an inviting proposal, the practicalities of courtroom size and configuration preclude it as a viable alternative.

[10] Federal Rule of Criminal Procedure 8(a) provides that

The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

"Even though distinct offenses have been properly joined under Rule 8, the court may order separate trials or grant a severance under Rule 14 if it appears that the defendant is prejudiced by the joinder." *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (quoting *United States v. Werner*, 620 F.2d 922, 928 (2d Cir. 1980)). However, "[i]n order to prevail, the defendant must show not simply some prejudice but *substantial* prejudice." *Id.* (quoting *Werner*, 620 F.2d at 928, emphasis in *Sampson*).

Joinder here appears appropriate under Rule 8(a), because Azikiwe's alleged possession of the drugs seized on May 24, 2006 was "of the same or similar character" to the underlying conspiracy to possess with intent to distribute 50 grams or more of cocaine base, charged in Count Eight. *See, e.g.*, *United States v. Smith*, 348 Fed. App'x 636, 638 (2d Cir. 2009) (affirming joinder and denial of severance of drug possession and distribution conspiracy and substantive counts from 2005 with drug possession and distribution conspiracy and related murder counts from 2002). However, because the May 24, 2006 drugs are outside the conspiracy time–frame and are the only physical evidence of narcotics linked to Azikiwe that the Government intends to introduce, there is substantial potential that a jury will improperly conclude a connection between those drugs and the charged drug conspiracy, and further that this improperly–concluded connection may not be completely cured by instructions to consider the charges separately.

The Government argues that even if Count Nine were severed, the evidence of the May 24th seizure of drugs would be admissible under Rule 404(b) to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," such that joinder of Count Nine would not be substantially prejudicial, and severance would not be warranted.

17

Rule 404(b) "generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge." *Huddleston v. United States*, 485 U.S. 681, 685 (1988). The trial court must ensure that the evidence is: (1) advanced for a proper purpose; (2) relevant to the crime for which the defendant is on trial; (3) more probative than prejudicial; and (4) if requested, admitted with a limiting instruction to the jury. *E.g., United States v. McCallum*, 484 F.3d 471, 475 (2d Cir. 2009). The Second Circuit has adopted an "inclusionary approach" to Rule 404(b), allowing evidence "for any purpose other than to show a defendant's criminal propensity," *United States v. Brand*, 467 F.3d 179, 196 (2d Cir. 2006) (quoting *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002)), so long as the evidence is "relevant and satisfies the probative-prejudice balancing test of Rule 403," *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994).

The Government maintains that the May 24, 2006 drug evidence would be probative of Azikiwe's "intent and knowledge" in the earlier–in–time charged conspiracy, but does not explain how this *subsequent* conduct could be probative Azikiwe's earlier state of mind.[11] In fact, at this stage, it is not known whether Azikiwe's intent and knowledge will actually be a specifically disputed issue at trial, and "[o]ther crimes evidence is inadmissible to prove intent when that issue is not really in dispute." *United States v. Manafzadeh*, 592 F.2d 81, 87 (2d Cir.

---

[11] The summary order in *Smith*, relied on by the Government, is inapposite here because the issue of whether "proof relating to earlier drug conspiracies may be admissible to show knowledge and intent" (Gov't's Resp. [Doc. # 375] at 29) was not addressed in *Smith*. Rather, the Second Circuit determined that the 2005 conduct at issue was of the same or similar character and therefore properly joined to charges of 2002 conduct, and severance was not required because "the jury was instructed to consider the charges separately, and the evidence was such that the jury could easily do so." *Smith*, 348 F. App'x at 638.

1979). Given inadequate explanation of the probative value of this drug evidence, and how it would outweigh its obvious prejudicial impact, its admissibility under Rule 404(b) remains in doubt and Azikiwe's Motion to Sever Count Nine will be granted.

IV.     Severance of Count Ten

Azibo moves to sever Count Ten, which charges him with possession of a firearm by a convicted felon based on firearms traced back to him. He argues that joinder of this count is unduly prejudicial because the jury would not otherwise learn of his prior felony convictions.

In *United States v. Jones*, 16 F.3d 487 (2d Cir. 1994), the Second Circuit vacated the conviction on the felon–in–possession count and remanded the case with direction to dismiss that count of the indictment on remand because of the "inevitable spillover effect occasioned by proof of Jones's tawdry record," which had been aggravated by the judge's repeated reference to the prior felony conviction during the jury instructions. The Second Circuit was explicitly concerned that proof of the defendant's criminal past had unfairly prejudiced him on counts as to which it was inadmissible. *Id.* at 492. *Jones* has been cited for the proposition that evidence of prior felony convictions can be unfairly prejudicial and for its recognition that "[c]ourts have held that joinder of an ex felon count with other charges requires either severance, bifurcation, or some other effective ameliorative measure." *Id.* at 492; *see, e.g.*, *United States v. Gonzalez*, No. 08cr363(BSJ), 2009 WL 1834317, *4 (S.D.N.Y. June 24, 2009) (severing felon–in–possession count "in order to avoid any prejudice that would attach to the admission of [the defendants'] prior convictions" and absent objection by the Government); *United States v. Brown*, No. 94cr631(AGS), 1995 WL 236718, *10 (S.D.N.Y. Apr. 24, 2005)

(same); *United States v. Boone*, No. 02cr1185 (RPP), 2003 WL 21488021, *3 (S.D.N.Y. June 27, 2003) (same).

Because of the substantial potential for prejudice that exists in admitting evidence that a defendant has committed a prior felony, even in "sanitized" form, or even using a sequenced special verdict on existence of a prior felony conviction to follow the general liability trial, particularly in a capital case, Azibo's motion to sever Count Ten is granted.

V. Conclusion

For the reasons given above, Defendants' [Doc. ## 316, 324] Motions to Sever from one another are DENIED but any penalty phases will be individualized sequential proceedings; Azikiwe's Motion to Sever Count Nine [Doc. # 321] is GRANTED; and Azibo's Motion to Sever Count Ten [Doc. # 325] is GRANTED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 13th day of August, 2010.