UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| United States of America | Criminal No. 3:06cr160 (JBA) |
| v. | March 4, 2011 |
| Azibo Aquart and Azikiwe Aquart | |

RULING ON RENEWED MOTION FOR SEVERANCE

Defendant Azikiwe Aquart ("Azikiwe") again moves [Doc. # 618] to sever Defendants' trials pursuant to Fed. R. Crim. P. 14(a)(1), based on the potential for unfair prejudice caused by the "spillover" of evidence the Government will seek to introduce about Azibo Aquart ("Azibo") in a joint trial.[1]

I.  Standard

Rule 14(a)(1) of the Federal Rules of Criminal Procedure provides that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." When co–defendants have been indicted together, generally "there is a preference in the

---

[1] Defendants earlier moved for trial severance on grounds of evidentiary spillover and mutually antagonistic defenses, arguing that Azikiwe would seek to impeach Azibo's credibility as the declarant of statements made in furtherance of the conspiracy by introducing evidence of Azibo's prior convictions; that because the Defendants are biological brothers who look alike, share similar and uncommon first and last names, and are both members of a small Rastafarian sect, the jury will unavoidably confuse them and conflate evidence of their respective conduct; and that each would blame and point fingers at the other. Severance was only granted as to Counts Nine and Ten. *See generally, United States v. Azibo Aquart and Azikiwe Aquart*, No. 3:06cr160(JBA), 2010 WL 3211074 (D. Conn. Aug. 13, 2010). The Court notes from Defendants' recent appearances at jury selection that Azikiwe has a close hair cut and Azibo's hair remains waist–length, resulting in distinctive differences in appearance between the two brothers.

federal system for joint trials" because they "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (internal quotations omitted). Even when a joint trial would cause prejudice, severance is not required; rather, Rule 14 "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538. Severance is only appropriate when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. Extrapolating these principles to a death penalty case, which has two trials, severance is also considered if a joint penalty trial would impair a jury's ability to make sound judgments about sentences of life or death.

II. Discussion

Azikiwe points to two categories of evidence, the admission of which in a joint trial he claims will prejudice him: post–conspiracy letters authored by Azibo and violent acts by Azibo prior to when Azikiwe can be shown to have joined the conspiracy. First, the Government intends to introduce at the joint trial, three post–indictment (hence, post–conspiracy) letters written by Azibo instructing others on how to mislead and throw off law enforcement investigations. The Government acknowledges that these letters could not be offered against Azikiwe during the Government's case–in–chief in a separate trial. Azikiwe argues these letters will unfairly suggest to the jury both Defendants' consciousness of guilt because they are brothers and are on trial for the same conspiracy. It is undisputed that none of these letters in any way implicitly or explicitly references or implicates Azikiwe. The Government offers a written stipulation for the jury stating, in effect, that Azikiwe did not write any of the letters, played no role in writing them, did not know they were written,

2

and urges a limiting instruction that the letters may not be considered against Azikiwe in any manner. Such a stipulation and limiting instruction, in addition to preliminary and post–evidence jury instructions that evidence against each Defendant is to be considered separately, appears to the Court at this stage to sufficiently mitigate the risk of prejudicial spillover from these items of evidence. *See United States v. Carson*, 702 F.2d 351, 367 (2d Cir. 1983) ("[A] judge's instructions to the jury to assess each defendant separately supports a finding of no spillover prejudice.").

Next, Azikiwe points to the Government's evidence of five instances of Azibo's assaults against subordinates in and competitors of the "Aquart enterprise," which took place at a time before the Government's evidence shows that Azikiwe joined the conspiracy. Azikiwe, who has no prior criminal record, and who the Government cannot prove knew of Azibo's prior uncharged violent conduct, claims that evidence of Azibo's violent acts would not be admissible in his separate trial, and if admitted in a joint trial, would also tar him in the jury's view in both the liability and penalty phases with his brother's violence. Specifically, Azikiwe worries that if evidence of Azibo's alleged violence in controlling his drug trafficking enterprise were introduced, "[t]he jurors could also assume that Azikiwe Aquart was at least aware of the drug operation for a lengthy period of time, and of the harsh methods used to maintain it and enforce Azibo Aquart's authority." (Mem. Supp. at 10.) The Government responds that it would seek to offer this same evidence in a separate trial of Azikiwe as evidence of "racketeering activity," the existence of which is an element of conspiracy to commit violent crimes in aid of racketeering ("VCAR") under 18 U.S.C. § 1959(a)(5) and, alternatively, that any prejudice in a joint trial could be mitigated by a specific limiting instruction at the time the evidence is admitted that as to Azikiwe, these acts

are only offered to demonstrate the existence of the VCAR conspiracy, and in a final jury charge that the case against each Defendant is to be considered separately.

Azikiwe argues that in an individual trial, he would seek preclusion under Federal Rule of Evidence 403 of any evidence of Azibo's uncharged violent acts, because those acts occurred before he joined the alleged drug conspiracy, and their prejudicial effects far outweigh their probative value as to his culpability and potential for jury confusion. However, "[w]here a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co–defendants, is admissible against the defendant." *United States v. Salameh*, 153 F.3d 88, 111 (2d Cir. 1998). Thus, such conduct is theoretically probative of the existence of the VCAR conspiracy that the Government charges that Azikiwe joined, and the merits of Azikiwe's claims to total Rule 403 preclusion of evidence of Azibo's prior violent acts in separate trials of Azikiwe are dubious.

Further, the use of limiting instructions as to Azibo's uncharged violence—that it is offered during the liability phase only to prove the existence of the VCAR conspiracy and that the jury may not infer that Azikiwe knew of the violence at the time it occurred solely because he was Azibo's brother[2]—would steer the jury away from conflating evidence of Azibo's violence maintaining his racketeering enterprise with Azikiwe's own conduct. Courts considering motions to sever brought by less–culpable defendants have held that limiting instructions like these lessen the potential that evidence of a more–culpable

---

[2] The need for further limiting instructions may arise during trial; at this stage, the Court's understanding of the evidence that will be offered is informed only by the Government's representations of what it will seek to offer, and this ruling does not preclude any party from filing motions *in limine* or motions for limiting instructions.

defendant's violent acts may cause prejudice. For instance, in *United States v. Spinelli*, although Robert Spinelli argued that the joint trial with his brother Michael resulted in substantial undue prejudice to him because testimony from prosecution witnesses related in graphic detail Michael's violent and murderous criminal history, a history that Robert did not share. The Second Circuit affirmed the district court's determination that severance was not warranted because the district court explicitly instructed the jury to consider the defendants individually,[3] and "differing levels of culpability and proof are inevitable in any multi–defendant trial." 352 F.3d 48, 55 (2d Cir. 2003). Similarly, in *United States v. Diaz*, limiting jury instructions were deemed to have protected against spillover prejudice to defendant Roman, who sought a separate trial because he was only charged with one of nine murders, and the jury heard substantial evidence of violent acts unrelated to his charge. 176 F.3d 52, 103 (1999).

Azikiwe counters that limiting jury instructions would be ineffective here, given the "volume and damaging nature" of the evidence against Azibo that the Government seeks to admit in a joint trial, relying on the observation in *United States v. Awadallah* that "[w]e know that limiting or curative instructions cannot always und[o] the damage of prejudicial evidence." 436 F.3d 125, 134 (2d Cir. 2006) (citing *Bruton v. United States*, 391 U.S. 123, 129

---

[3] The district court judge instructed: "As you know, two defendants are on trial in this case. You must consider the case against each defendant separately. In effect, two separate trials have taken place before you. I have told you that before." He continued, "[i]t is your duty to give separate individualized consideration to the case of each defendant," and reminded the jurors that they had to "consider each count of the indictment and each defendant charged in that count separately and . . . return a separate verdict on each defendant for each count in which he [was] charged." 352 F.3d at 55, n. 3.

5

(1968)).[4] Yet compared to the nature of eyewitness evidence of Azibo and Azikiwe's joint participation in the murders alleged and the associated DNA evidence, which would be admissible in both joint and separate trials, evidence of Azibo's prior uncharged acts, which may prove only one element of VCAR murder, is not nearly as central,[5] and the likelihood of prejudice is diminished by clear guidance to the jury on how these two categories of evidence may be considered against Azikiwe. The Court concludes, again, that separate trials are not warranted.

---

[4] In *Awadallah*, potential prejudice was not caused by evidence admissible against one defendant and not the other. Rather, the court's concern was that testimony by grand jurors about the defendant's credibility in a trial for grand–jury perjury would confuse the trial jury and result in the trial jury deferring to the grand jurors' determination that the defendant's testimony was knowingly false, despite the differing levels of proof required for grand juries and trial juries in criminal matters. Because *Awadallah* involved evidence that would have required the jury to distinguish between the evidentiary standards for grand and petit juries and discount that evidence accordingly and did not implicate the prospect of prejudicial spillover, it is of limited applicability here.

[5] Azikiwe also argues that during potential penalty trials, because the two Defendants are brothers and share many familial mitigation witnesses, if a juror makes adverse credibility or reliability findings at Azibo's penalty hearing, that juror will be unlikely to revise those findings when hearing the same witnesses at Azikiwe's penalty hearing. However, that concern might only apply if penalty trials were phased, and counsel for Azikiwe has consistently sought a joint penalty phase if both Defendants are found guilty, absent complete severance.

III.   Conclusion

Accordingly, Azikiwe's [Doc. # 618] Renewed Motion to Sever is DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 4th day of March, 2011.