```
 1                UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT
 2

 3   _____
                                   )
 4   UNITED STATES OF AMERICA,     )
                                   ) No. 3:06-CR-00160-JBA-3
 5              Plaintiff,         )
                                   ) December 22, 2020
 6                                 )
     v.                            ) 11:01 a.m.
 7                                 )
                                   ) 141 Church Street
 8                                 ) New Haven, Connecticut
     AZIBO AQUART,                 )
 9                                 )
                Defendant.         )
10   _____)

11

12

13           TELEPHONIC STATUS CONFERENCE

14

15

16   B E F O R E:

17        THE HONORABLE JANET BOND ARTERTON, U.S.D.J.

18

19

20

21

22

23

24           Official Court Reporter:
             Melissa J. Cianciullo, RMR, CRR, CRC
25           (203) 606-1794
```

1  A P P E A R A N C E S:

2  For the Government:

3        Peter D. Markle, AUSA
        U.S. Attorney's Office
4        157 Church Street, 23rd floor
        New Haven, CT 06510
5        203-821-3700
        Email: Peter.Markle@usdoj.gov

6

7  For the Defendant:

8        David A. Moraghan, Esq.
        Smith, Keefe, Moraghan & Waterfall LLC
9        257 Main Street, 2nd Floor
        P.O. Box 1146
10       Torrington, CT 06790
        860-482-7651
11       Email: Dam@skmwlaw.com

12       Marc Bookman, Esq.
        Atlantic Center for Capital Representation
13       1315 Walnut Street, Suite 905
        Philadelphia, PA 19107
14       215-732-2227
        Email: Marcbookman12@gmail.com

15

16       Monica Foster, Esq.
        Indiana Federal Community Defender
17       111 Monument Circle, Suite 3200
        Indianapolis, IN 46204
        317-383-3520
18       Email: Monica_foster@fd.org

19

20

21

22

23

24

25

1          THE COURT:  Good morning, Counsel.  We are
2     here on *United States v. Azibo Aquart*, and our
3     purpose is to give the government the opportunity to
4     provide the Court with a status report with the
5     consent of all counsel.  And the purpose today is to
6     give Mr. Markle the opportunity to do just that.
7     This is Aquart 6-CR-160.
8          May I have appearances, please.
9          MR. MARKLE:  Yes, Your Honor.  Good morning.
10    On behalf of the government, Peter Markle.
11         THE COURT:  Thank you.  Good morning.  Anyone
12    else?
13         MS. FOSTER:  Yes, Your Honor.  Good morning.
14    On behalf of Mr. Azibo Aquart, Monica Foster, Marc
15    Bookman, and David Moraghan.
16         THE COURT:  All right.  This matter has
17    been -- we've had a number of status conferences to
18    provide the Court with an update on how the
19    government will proceed following remand for a new
20    sentencing hearing in this case.
21         So, Mr. Markle, would you proceed.
22         MR. MARKLE:  Yes, Your Honor.  And I
23    apologize for building up any suspense by making some
24    calls yesterday.  I just knew that I was trying -- I
25    was attempting to do this quickly because I know

1    there is -- the new year is approaching, and

2    prioritizing cases is obviously on every Court's mind

3    everywhere.  I know that.

4         So just to cut to the chase, Your Honor, we

5    were advised on December 17, 2020, by a directive

6    from the attorney general that we redo, are

7    authorized and directed to withdraw the notice of

8    intention to seek the death penalty against Azibo

9    Aquart.  So I obviously needed to apprise the Court

10   of that fact, and I have informed counsel for

11   Mr. Aquart by telephone yesterday of that fact.  And

12   that authorization or deauthorization means that

13   there will be no death penalty phase proceeding, and

14   in the government's opinion we can proceed to a

15   resentencing at the Court's -- as soon as the Court

16   wants to schedule such a proceeding.

17        THE COURT:  All right.  Thank you.

18        And let me ask defense counsel whether the

19   resentencing, which is what this would be, and since

20   it is mandatory life, I would assume it is a somewhat

21   pro forma proceeding.  But (a) is that correct; and

22   (b) can it be done remotely in which case we can

23   schedule it soon?

24        MS. FOSTER:  Your Honor, this is Monica

25   Foster.

1          Mr. Markle's call to us yesterday came

2    completely out of the blue.  We were not expecting

3    it.  We did not participate in the deauthorization

4    process, and we had no knowledge that the government

5    obtained deauthorization.  We appreciate Mr. Markle's

6    efforts in that, being part of that.  But as a

7    consequence, we really have not had time to look into

8    whether this matter needs to be done in person or

9    whether it can be done via videoconferencing.  I know

10   that the United States penitentiary in Terre Haute

11   does have videoconferencing capabilities.  I have had

12   a chance to look at Rule 43(c) this morning which

13   seems to suggest that a defendant can waive presence

14   in a noncapital case.

15         I've also had the opportunity to look at one

16   case, *United States v. Salim*, a Second Circuit case,

17   690 F.3d, page 115.  And that Court seemed to say

18   that it was error -- well, didn't seem to say.  It

19   did say that it was error there to permit

20   videoconferencing sentencing but that the error was

21   harmless.  And that was in the face of counsel's

22   representations that the defendant wished to waive

23   presence and the defendant's statements on the record

24   at the videoconferencing.  Defendant's statements in

25   that regard were somewhat unusual in that they seemed

1    to suggest that his waiver was involuntary.

2         But we would, if the Court -- and also let me

3    say this:  We have not conveyed this information to

4    our client yet, so we don't know what our client's

5    position is.  We are speaking with him this afternoon

6    at 3 o'clock.

7         I would also inform the Court that if we

8    were to do this via videoconferencing, I would expect

9    that I would be present at the penitentiary with

10   Mr. Aquart for that proceeding.  Right now there are,

11   at least as reported by the *New York Times* this

12   morning, 17 people on death row who have tested

13   positive in the last couple days for COVID.  I am

14   very reluctant to go out there while that's going on.

15        So if we could get some time from the Court

16   to do a little more research regarding (a) what our

17   client's position is on a videoconference

18   resentencing and certainly (b) what the law is.  I

19   feel like I've only touched the surface here.

20        As I said, Mr. Markle was kind enough to call

21   us yesterday.  And in between other obligations,

22   we've tried to do what we can with regard to

23   researching this matter.  But I don't have -- I don't

24   have really clear -- a clear understanding of what

25   the law is in this regard to let the Court know what

 1    our position is at this point.

 2          THE COURT:  All right.  And I certainly

 3    understand the reasonableness of your reluctance to

 4    go to the facility while the pandemic is spiking

 5    there, as everywhere.

 6          How much time, Ms. Foster, do you need to

 7    give the Court a complete picture of what is

 8    necessary to be done to complete the proceedings on

 9    remand?

10          MS. FOSTER:  Well, I think that, you know,

11    with the holidays and everything, although the

12    holidays are obviously grimmer and less festive this

13    year than normal, I think I would ask the Court for,

14    I don't know, two or three weeks to get something to

15    you with regard to our position.

16          Mr. Markle and I have also spoken this

17    morning about trying to come up with an agreement as

18    to how this should all proceed, and we're

19    certainly -- I think that that would be helpful to

20    the Court as well.  But I think we could get

21    something to you in the next couple weeks.

22          MR. MARKLE:  Yes, Your Honor.  One suggestion

23    that I would have, or perhaps that we discussed very

24    briefly just by e-mail, was I could file a motion to

25    schedule sentencing hearing, and then -- I was

1  waiting because Attorney Foster had asked that her

2  client -- before anything is publicly filed or put

3  out there, that she has an opportunity to talk to

4  Mr. Aquart.  So I held off.  But I could file that

5  first thing tomorrow.  And then if counsel by then

6  have -- counsel could respond -- so we have a record,

7  that counsel could respond and see how much time --

8  maybe by then, after talking to Mr. Aquart, they

9  would have some idea of how much time they would

10  need.

11       THE COURT:  Does the government know its

12  position on how now to proceed in what is now a

13  noncapital case?

14       MR. MARKLE:  I had not researched it, Your

15  Honor.  But I thought that the CARES Act does provide

16  for it to be done by a Zoom proceeding, as we've done

17  in many sentencings, now that Mr. Aquart doesn't face

18  the death penalty, obviously.  So I had not

19  researched it though.  So I'll take a look at that

20  case and ...

21       THE COURT:  Well, I guess what I'm wondering

22  is whether it makes sense for you to hold off filing

23  your motion to reschedule the sentencing hearing

24  until you're prepared to detail in that motion the

25  procedures that you believe would be appropriate for

1    the sentencing hearing.  And then -- so that you take

2    your time to figure that out.  And in the meanwhile,

3    and in response to that, Ms. Foster can present her

4    position on behalf of Mr. Aquart, and we sort of have

5    it in a more methodical fashion.

6            MR. MARKLE:  Yes.  That make sense, Your

7    Honor.

8            THE COURT:  Okay.  So why don't we do this.

9    Without setting a time limit for the government to

10   file this motion, why don't we anticipate that the

11   defense will have 14 days to respond to the motion.

12   Does that make sense as an orderly way to do this and

13   make sure we have captured all the nuances of what

14   will need to be done?  We need to do that in order to

15   make sure we have the technology available to do

16   this.  If in fact it is to be done remotely, I --

17   needless to say, I too have not researched it.  But

18   the CARES Act has certainly authorized remote

19   proceedings in everything else that we have done

20   that's noncapital.  But I leave that to the wisdom of

21   Ms. Foster.

22           If this were required by Mr. Aquart to be in

23   person, that is, he will not waive his right to

24   personal presence, this is not going to be scheduled

25   for months.  So that's the trade-off.  We can

1    schedule the hearing remotely, you know, with

2    relative dispatch after the beginning of the year.

3    We cannot do the same for an in-person hearing.

4         MS. FOSTER:  Your Honor, let me just -- let

5    me just bring one matter to the Court's attention,

6    and that is this:  We've been videoconferencing with

7    Mr. Aquart.  We talk to him regularly via phone, but

8    we've also been videoconferencing with him about once

9    a month at the prison through the prison's program

10   which is Webex, which you don't need to have the

11   software for.  You can just -- if they send you the

12   invite, you can just get on it.  But that said, it's

13   pretty terrible.  It cuts in and out all the time.

14   And that may -- if Mr. Aquart doesn't want to waive,

15   my guess is that it would have to do with that.  And

16   I would also want to alert the Court and Mr. Markle

17   to the fact that I don't know what the problem is out

18   there but it's not a great situation.  It's not like

19   Zoom calling with different law offices where, you

20   know, that seems to be conducted pretty flawlessly.

21   It's not like that at all.

22        THE COURT:  And I take it that we can't set

23   up a Zoom remote proceeding which the facility would

24   join?  They don't have that capability?

25        MS. FOSTER:  Well, I think anybody has the

1   capability to Zoom.  Why they're not using that

2   program, I don't know.  I think that, in all

3   fairness, a request from the Court would be met more

4   seriously than the request from the local federal

5   defender.  I could reach out to counsel and find out

6   why it is they're not using Zoom.  I'm not sure if

7   it's a software issue or if it is the fact that, you

8   know, the prison is a lot of cement and a lot -- you

9   know, big, heavy cement walls and a lot of metal.

10  You know, if that problem with the Webex would be the

11  same problem we would have with Zoom, I don't know.

12  But I'm happy to reach out to counsel at Terre Haute

13  and get her thoughts on that.

14          THE COURT:  So what if I were to ask my

15  courtroom deputy to be in touch with the penitentiary

16  at Terre Haute along with our IT people who have been

17  setting up these remote proceedings in all the other

18  criminal matters.  Does that make sense?

19          MS. FOSTER:  I think that's a terrific idea.

20  And I'm happy to send the Court the information I

21  have for the lawyer out there who has been my point

22  of contact.

23          THE COURT:  Okay.  If you would do that.  And

24  is the Terre Haute facility just one facility or are

25  there separate sections?  Well, you're going to send

1    us the contact information.

2         MS. FOSTER:  Yes.  But the answer to your

3    question is there's separate sections.  So there's an

4    FCI right across the street which is where the USP

5    used to be.  It's all in the same, sort of, compound.

6    I don't know if they have better receptivity over

7    there, but I think that's certainly something that

8    your people could inquire about.

9         THE COURT:  Okay.  Mr. Markle, does the

10   government have any input to this problem?

11        And I am acutely sensitive to how much of a

12   problem this can be.  I have already had a sentencing

13   hearing that failed.  We had to stop it because of

14   the inadequacies of the technology.  It involved an

15   interpreter and so multiple points of contact, but

16   it -- we could not be assured that the defendant was

17   meaningfully able to be heard and to hear the

18   proceedings.  So I'd like to get as much ironed out

19   as possible.

20        Mr. Markle, do you have anything to add?

21        MR. MARKLE:  Unfortunately not, Your Honor.

22   Usually we defer to the Court's IT people to set

23   these up and we just join.  I'm happy to put

24   anyone -- if there's a need, our IT people will

25   certainly work with the court staff to do whatever we

1    can to make this work.

2           THE COURT:  Okay.  All right.  Then Donna

3    Barry will be my point person on this to start

4    facilitating or to start investigating whether we can

5    in fact proceed by Zoom if in fact Mr. Aquart is

6    willing to waive his right to personal presence.

7    Does that sound right?

8           MR. MARKLE:  Yes, Your Honor.

9           MS. FOSTER:  Yes, Your Honor.

10          THE COURT:  All right.  I'm not going to set

11   any dates then.  I will simply await the government's

12   motion to schedule the sentencing hearing and then

13   the defendant's response within 14 days after.

14   And -- okay.  Then in the meanwhile, in anticipation

15   that Mr. Aquart may elect to waive, we will get all

16   of the IT particulars straightened out.

17          MS. FOSTER:  Thank you, Your Honor.

18          THE COURT:  All right.  Anything further?

19          MS. FOSTER:  Not from the defense.

20          MR. MARKLE:  The only -- I guess the other

21   matter in terms of the remote proceeding is -- and I

22   guess I should state for the record, we have notified

23   the victim's family of this decision by the attorney

24   general, and I would anticipate that there may be

25   some family members who would want to participate

1    either in person or remotely.  So that just should be

2    factored into whatever way we decide to do this.

3    Remotely, there may be more than just the people on

4    this phone call.

5         THE COURT:  That's fine.  And we will

6    certainly -- we are certainly able to accommodate

7    them and hear them at the appropriate time.  They

8    will not, however, be in the courtroom in person.

9         MR. MARKLE:  Understood.  Thank you, Your

10   Honor.  I have nothing further.  Thank you.

11        THE COURT:  And that's even if Mr. Aquart

12   doesn't waive and he is here, he requires coming to

13   the courtroom.  Well, I think we'll cross that bridge

14   when we get to it.  But the fewer people in our

15   courtrooms when we have this very useful and

16   functional remote alternative is the safest for

17   everyone.  Okay.

18        All right then.  I will anticipate receiving

19   the defendant's -- excuse me, the government's motion

20   when it is ready to file it and the defendant's

21   response.  And in the meanwhile, you all can do all

22   of your background work that will inform the motion

23   and the response and we will do ours.

24        MS. FOSTER:  Thank you, Your Honor.

25        THE COURT:  All right.  Thank you,

1    Mr. Markle, for advising so promptly of what the --

2    of the deauthorization decision by DOJ.  And we will

3    likely see you or hear you next year.

4         To the extent one can have a happy holiday,

5    have a happy holiday.  In any event, I hope it is a

6    safe and masked holiday.

7         All right.  If there is nothing further then,

8    thank you very much.

9         (Proceedings concluded, 11:22 a.m.)

10

11              C E R T I F I C A T E

12

13    RE: UNITED STATES OF AMERICA v. AZIBO AQUART
              No. 3:06-CR-00160-JBA-3

14

15         I hereby certify that the within and

16    foregoing is a true and accurate transcript taken in

17    the aforementioned matter to the best of my skill and

18    ability.

19

20         /s/ Melissa J. Cianciullo_____

21       MELISSA J. CIANCIULLO, RMR, CRR, CRC
                Official Court Reporter
22             United States District Court
              141 Church Street, Room 147
23            New Haven, Connecticut  06510
                   (203) 606-1794

24

25