UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA, | Criminal No. 3:06CR160 (JBA) |
|---|---|
| *v.* | |
| AZIBO AQUART. | October 18, 2021 |

**RULING ON DEFENDANT'S MOTIONS**

Defendant Azibo Aquart was convicted and sentenced to death for the murders of three victims. The United States Court of Appeals for the Second Circuit affirmed his convictions, but vacated his capital sentence and remanded the case for a new penalty proceeding consistent with its decision. In several motions, Defendant moves to dismiss all counts against him. (*See* Mot. To Dismiss VICAR Counts and Accompanying Mem. of Law ("Def.'s VICAR Mot.") [Doc. #1310]; Mot. For Resentencing on Count Eight and to Dismiss Counts Five, Six, and Seven and Accompanying Mem. of Law ("Def.'s Mot. to Dismiss Counts Five-Seven") [Doc. # 1312]; and Corrected Notice of Intent to Adopt Aquart's Pro Se "Defendant's Motion to Dismiss Original and All Superseding Indictments for Speedy Trial Violations and Due Process Concerns" ("Def.'s Speedy Trial Mot.") [Doc. # 1314].) The Government opposes Defendant's motions [Doc. # 1316]. For the following reasons, Defendant's Motions to Dismiss Counts One through Eight are denied and Defendant's Motion for Resentencing on Count Eight is granted.

**I.   Relevant Factual Background**

The Court assumes the parties' familiarity with the case. The following factual background represents those facts relevant to Defendant's motions.

On May 23, 2011, a jury convicted Defendant of all counts charged.[1] On June 15, 2011, the jury reached a penalty phase verdict of death on the capital counts of conviction (Counts Two through Seven). Defendant appealed, bringing various challenges to the guilt and penalty phases of his trial. On December 20, 2018, the Second Circuit unanimously affirmed Defendant's convictions on the eight charged counts but vacated and remanded the case for a new penalty proceeding. *United States v. Aquart*, 912 F.3d 1 (2d Cir. 2018), *cert. denied*, 140 S. Ct. 511 (2019).

Thereafter, the Government advised that it would no longer seek the death penalty. (Gov't's Mem. in Opp'n to Def.'s Mots. to Dismiss ("Gov't Opp'n") [Doc. #1316] at 1.) The Court then directed preparation of a pre-sentence report, set a new sentencing date for October 21, 2021, and scheduled submission of sentencing memoranda.

## II.   Discussion

Defendant's challenges are extensive. Regarding the VICAR counts (Counts One through Four), he argues they are deficient because their underlying charged murders do not constitute predicate offenses for VICAR. (*See* Def.'s VICAR Mot. at 14-24.) Next, Defendant argues that the jury instruction and the verdict form for the VICAR counts were inadequately specific as to jury unanimity regarding the underlying predicate murder under Connecticut law. (*Id.* at 25-27.) Defendant also argues that the jury was not instructed as to the essential elements of underlying state-law predicate offenses for the VICAR counts. (*Id.* at 27-31.) In his final challenge

---

[1] The jury found Defendant guilty of: three counts of VICAR murder in aid of racketeering under 18 U.S.C. § 1959(a)(1) for the killings of Tina Johnson (Count Two), James Reid (Count Three), and Basil Williams (Count Four), and three counts of drug–related murder under 21 U.S.C. § 841 for the killings of Tina Johnson (Count Five), Basil James Reid (Count Six), and Basil Williams (Count Seven); one count of conspiracy in aid of racketeering under § 1959(a)(5) (Count One); and one count of conspiracy to distribute and to possess with intent to distribute fifty grams or more of cocaine base under 21 U.S.C. § 846 (Count Eight).

2

to the VICAR Counts, he argues that the evidence supporting his conviction for these counts was insufficient.[2]

Additionally, Defendant challenges his convictions on Counts Two through Four and Five through Seven as double jeopardy violations. (*Id.* at 32-33.) He also challenges his conviction under Count Eight because he was not properly convicted of an offense under 21 U.S.C. § 841(b)(1)(A) and for drug related murder in Counts Five through Seven. (Def.'s Mot. to Dismiss Counts Five-Seven at 24.) Separately, Defendant challenges all his convictions on speedy trial and due process grounds. (Def.'s Speedy Trial Mot. at 1.) Finally, Defendant challenges his life sentence under Count Eight pursuant to 21 U.S.C. § 841(b)(1)(A) because he did not possess a quantity of crack cocaine sufficient to trigger an enhanced life sentence. (Def.'s Mot. to Dismiss Counts Five-Seven at 18-19.)

### A. Challenges to Defendant's Conviction[3]

As an initial matter, there is some doubt as to whether Defendant may challenge his conviction at this juncture. Defendant argues that when the Second Circuit remanded this case for a new "penalty proceeding," that remand order became a "a nullity" when the government decided not to seek the death penalty. (Def.'s VICAR Mot. at 2.) He contends that the "most natural reading" of the phrase "penalty proceeding" includes only the "penalty phase of a bifurcated capital trial conducted in accordance with the Federal Death Penalty Act" rather than applying to a non-

---

[2] Defendant concedes that this argument was already rejected by the Second Circuit. (*See* Def.'s VICAR Mot. at 31-32.); *Aquart*, 912 F.3d at 17-20.

[3] The Court construes all but Defendant's arguments with respect to his sentence to Count Eight under 21 U.S.C. § 841(b)(1)(A) as challenges to his conviction. Included in Defendant's challenges to his convictions are his arguments regarding the jury instructions and verdict form, the sufficiency of the evidence, the drug-related murder convictions, his contention that murder is not a valid predicate offense for VICAR murder, and his speedy trial and due process arguments (included in a pro se motion, which has been adopted by his counsel).

3

capital resentencing. (Consolidated Reply Mem. in Supp. of Mots. to Dismiss and for Resentencing ("Def.'s Reply") [Doc. # 1327] at 4.) Defendant also argues that even if the Court determines that the mandate applies to his non-capital resentencing, the Court has discretion to expand the resentencing where the appellate court has not specifically limited the scope of the remand. (*Id.*) Therefore, Defendant argues, the Court may properly consider the challenges to his conviction.

On the other hand, the Government argues that the mandate from the Second Circuit is "straightforward, and the analysis is simple." (Gov't Opp'n at 11.) According to the Government, the Court may not consider the merits of the underlying conviction at this stage because the Second Circuit's mandate affirmed his conviction. (*Id.*) The Government also contends that its decision not to seek the death penalty on remand does not alter this conclusion. (*Id.* at 13.) Finally, the Government argues that this case does not present the exceptional circumstances required for the Court to exercise its discretion in hearing the merits of Defendant's motions. (*Id.* at 14.)

When the Second Circuit reverses a defendant's sentence but not the underlying conviction and remands for resentencing, there is a presumption of limited sentencing, *i.e.* the remand is not for *de novo* resentencing. *United States v. Malki*, 718 F.3d 178, 182 (2d Cir. 2013) (citing *United States v. Quintieri*, 306 F.3d 1217, 1228–29 n.6 (2d Cir.2002)). This "mandate rule" generally bars re-litigation of issues previously waived by the parties or decided, whether expressly or impliedly, by the appellate court. *Id.*; *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir.2010).

The Court may exercise its discretion to reconsider or modify its prior decisions that have been addressed by the Court of Appeals if issues "became relevant only after the initial appellate review" or if the court is presented with a "cogent or compelling reason for resentencing *de novo*." *United States v. Hernandez*, 604 F.3d 48, 54 (2d Cir.2010); *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir.2001) (citing *United*

4

*States v. Stanley*, 54 F.3d 103, 107 (2d Cir.1995)). Absent those circumstances, a mandate should not be interpreted to allow for re-opening an issue on remand unless "it clearly says so" or that intent is evident from the "spirit of the mandate." *Ben Zvi*, 242 F.3d at 95 (citation omitted).

The Court does not interpret the Second Circuit's mandate as permitting Defendant to relitigate his convictions. When the Second Circuit issued its mandate, it stated: "the judgment of *conviction is affirmed* as to the defendant's guilt; his *capital sentence is vacated* and the case is remanded for a new penalty proceeding consistent with this opinion." *Aquart*, 912 F.3d at 70 (emphasis added). The judgment of conviction was plainly affirmed. As such, Defendant cannot relitigate the merits of his convictions, whether or not the specific issues he raises now were addressed by the Second Circuit. *See Malki*, 718 F.3d at 182 (emphasizing that the mandate rule applies to issues that were both *decided* and *waived*); *Stanley*, 54 F.3d at 107 (rejecting the defendant's attempts to raise new issues and noting that the defendant "on his first appeal failed even to raise the issue he now seeks to litigate").

Additionally, the Court does not accept Defendant's argument that the Government's decision not to seek the death penalty at resentencing constitutes a compelling reason to challenge his conviction. Defendant advances a textual argument urging the Court to read the phrase "penalty proceeding" in the mandate narrowly to encompass only the penalty stage of a bifurcated capital murder proceeding but not a non-capital sentencing proceeding. (*See* Def.'s Reply at 4.) Defendant is correct to read the mandate narrowly, but a narrow reading of the mandate does not take the Court where Defendant wishes to lead it. Read for its plain meaning, a "penalty proceeding" means just what it says: a proceeding that is "the part of the criminal trial in which the fact-finder determines the punishment for a defendant who has been convicted." *Penalty Phase*, Black's Law Dictionary (11th ed.

5

2019). And when read in the full context of the mandate, the Second Circuit's use of "penalty phase" cannot be read in conflict with its express affirmance of the conviction over Defendant's numerous direct challenges to it. *See Ben Zvi*, 242 F.3d at 95.

At bottom, Defendant wishes to use his resentencing to take a second bite at the apple and retry his case. But his arguments supporting the Court's authority to entertain this maneuver are unpersuasive. The Second Circuit issued this Court a mandate to which it is bound. Any discretion the Court retains in interpreting that mandate does not justify allowing Defendant to relitigate arguments that the Second Circuit rejected or that he failed to raise.

**B. Challenge to Defendant's Sentence**

Although the Court declines to reach the merits of Defendant's challenges to his conviction, the Second Circuit's mandate does not foreclose the Court from addressing challenges to his sentence. Normally, "where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone," it is considered waived under the mandate rule. *United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002). "An issue is not considered waived, however, if a party did not, at the time of the purported waiver, have both an opportunity and an incentive to raise it before the sentencing court or on appeal." *Id.* Such opportunity and incentive do not exist if a sentencing determination had "no practical effect" on Defendant's original sentence but "becomes relevant only after appellate review." *Id.* at 29-30.

Unlike with challenges to his conviction, Defendant's arguments challenging his sentence for Count Eight seek to address an issue that has "become relevant only after initial appellate review." *See Hernandez*, 604 F.3d at 54; *Quintieri*, 306 F.3d at 1229-30. At Defendant's initial sentencing and on direct appeal therefrom, Defendant's sentence for Count Eight had no practical effect on his death sentence.

6

Now that the Government has decided not to pursue a death sentence, whether Defendant is sentenced to life imprisonment or a maximum of forty years in prison for Count Eight has become highly relevant to him. *Compare* 21 U.S.C. § 841(b)(1)(A)(iii) (prescribing a punishment of ten years to life in prison for possession of 280 grams or more of a mixture or substance which contains cocaine) *with* 21 U.S.C. § 841(b)(1)(B)(iii) (prescribing a punishment of five to forty years in prison for possession of 28 grams or more of a mixture or substance which contains cocaine). Consequently, though ordinarily unavailable to Defendant on remand for resentencing, review of Defendant's sentence for Count Eight is appropriate here.

Likewise, Defendant's double jeopardy challenges raise issues newly relevant on remand—whether he can be punished separately for VICAR murder under 18 U.S.C. § 1959(a)(1) and drug-related murder pursuant to 21 U.S.C. § 848(e)(1)(A) and whether he can be punished for drug-related murder and narcotics conspiracy under 21 U.S.C. § 846. *See United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006) (concluding that defendants' double jeopardy rights are only at risk of violation after they are convicted of multiplicitous charges, as they cannot be punished more than once for the same offense).

      *i.     Defendant's claims regarding his sentence on Count Eight*

Turning to the merits, Defendant raises five legal challenges to the life sentence previously imposed on Count Eight.[4] Collectively, Defendants arguments

---

[4] First, Defendant argues that he can be sentenced only for the crime for which he was convicted—possessing fifty grams of a mixture or substance containing cocaine—which does not authorize a life sentence as presently formulated. (Def.'s Mot. to Dismiss Counts Five-Seven at 18-19.) Second, Defendant argues that his sentence violates the Grand Jury Clause of the Fifth Amendment because he was indicted for possessing fifty grams of cocaine and thus, the life sentence enhancement for possession of 280 or more grams should not have been applied to him. (*Id.* at 20.) Third, Defendant argues that the inclusion of a special interrogatory on the verdict form created "a certainty" that he was convicted of a separate offense (possessing 280 grams or more of a substance or mixture containing cocaine) than the one charged

7

boil down to this: Defendant's sentence for Count Eight was impermissible because he was sentenced pursuant to a life imprisonment enhancement inapplicable to the facts of his case. (*See* Def.'s Mot. to Dismiss Counts Five-Seven at 18-23.) The Government does not oppose a reduced sentence of forty years on Count Eight. (Gov't Opp'n at 22.)

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *see also United States v. Cotton*, 535 U.S. 625, 627 (2002) (addressing whether the omission from a federal indictment of a fact that enhances the statutory maximum sentence justifies a court of appeals' vacating the enhanced sentence, even though the defendant did not object in the trial court).

When a defendant is sentenced pursuant to 21 U.S.C. § 841(b), "drug quantity is an element of the offense that must be charged in the indictment and proved to a jury beyond a reasonable doubt or admitted by the defendant where the quantity triggers a change in both the mandatory minimum sentence and the maximum sentence." *United States v. Gonzalez*, 420 F.3d 111, 129 (2d Cir. 2005). The defendant in *Gonzales* originally pleaded guilty to an indictment charging him with conspiracy to possess with intent to distribute fifty grams of cocaine base, but specifically denied the quantity at his allocution. *Id.* at 114, 116-17. Despite this ambiguity, the trial judge

---

(possessing 50 grams). This, Defendant argues, constituted a constructive amendment to Count Eight of the Fourth Superseding Indictment. (*Id.* at 21.) Fourth, Defendant argues that because Count Eight was constructively amended, his sentence for that count fell outside the applicable statute of limitations. (*Id.* at 22-23.) Finally, Defendant argues that his sentence for Count Eight violated the Sixth Amendment jury trial guarantee because the jury that convicted him was not instructed "that in order to answer the special interrogatory about the 280-grams threshold in the affirmative, it had to find that the government had proved that amount beyond a reasonable doubt." (*Id.* at 23.)

8

sentenced the defendant based on a preponderance of the evidence that he possessed a specified amount of cocaine. *Id.* at 118, 120. In the interim between his guilty plea and his sentence, *Apprendi* was decided. *Id.* at 115. In response to the *Apprendi* decision, the Second Circuit reversed his sentence and held that a criminal defendant cannot be sentenced pursuant to a penalty corresponding with a specified quantity of controlled substances unless "a jury found or Gonzalez himself admitted the specified drug quantity element." *Id.* at 125; *see also United States v. Cordoba-Murgas*, 422 F.3d 65, 66 (2d Cir. 2005) (remanding for resentencing "not to exceed the statutory maximum for violations of 21 U.S.C. § 841(a) with an unspecified quantity of cocaine" because the defendant's charges involved an unspecified quantity of drugs).

Defendant was convicted of conspiracy to possess with intent to distribute fifty grams or more of a substance or mixture containing cocaine, (*see* Fourth Superseding Indictment [Doc. # 361] at 11), which authorizes a maximum sentence of forty years' imprisonment, *see* 21 U.S.C. § 841(b)(1)(B)(iii). However, he was sentenced as if he had been convicted of conspiracy to possess and distribute at least 280 grams, the penalty for which offense authorizes a life sentence. This discrepancy stems from the fact that at the time Defendant was charged with Count Eight, conspiracy to possess fifty grams of cocaine did carry a potential life sentence. But by the time Defendant was sentenced, Congress amended the applicable statutory scheme such that Defendant could be sentenced to life imprisonment on that count only if the jury convicted him of conspiracy to possess 280 grams or more of cocaine. *See* Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372 (2010); *see also Dorsey v. United States*, 567 U.S. 260, 282 (2012) (holding that the more lenient penalties of the Fair Sentencing Act apply to those offenders whose convictions preceded the effective date of the Act, but who are sentenced after that effective date).

The jury convicted Defendant of conspiracy to possess and distribute fifty grams of cocaine base, 230 grams short of the quantity required for the life sentence he was given for that crime. Because the jury did not find beyond a reasonable doubt that Defendant conspired to possess with intent to distribute at least 280 grams of cocaine base, the law does not authorize his life sentence on this count. *See Apprendi*, 530 U.S. at 490; 21 U.S.C. § 841(b)(1)(A)(iii). The Court will resentence Defendant accordingly.

### ii. *Defendant's double jeopardy claims*

Defendant raises two distinct arguments with respect to the Double Jeopardy Clause. First, defendant argues that it is a double jeopardy violation to enter judgment "for six murders [i.e., on three VICAR charges and three drug-related murder charges] when three people were killed." (Def. Mot. to Dismiss VICAR Counts at 32.) Second, he argues that punishment for both a drug conspiracy under 21 U.S.C. § 846 and for a drug-related murder under 21 U.S.C. § 848 violates the Double Jeopardy Clause, because the § 846 drug conspiracy should properly be viewed as a lesser-included offense of the § 848 murder. (*Id.* at 28-29.)

The Government opposes both lines of reasoning. First the Government argues that "the VICAR murder offenses and the drug-related murder offenses indisputably contain elements not contained in the other" and are distinct with respect to the Double Jeopardy Clause. (Gov't's Opp'n at 16-18.) The Government then argues that drug conspiracy pursuant to § 846 and drug-related murder pursuant to § 848 are "very different crimes" and that § 846 should not be construed as a lesser included offense to § 848 because Congress did not intend for that interpretation. (*Id.* at 18-19.)

The Double Jeopardy Clause of the Fifth Amendment "protects against multiple punishments for the same offense." *United States v. Josephberg*, 459 F.3d 350,

10

355 (2d Cir. 2006) (quoting *Illinois v. Vitale*, 447 U.S. 410, 415 (1980)). But charged offenses do not violate the Double Jeopardy Clause if "each of the offenses . . . requires proof of a different element." *Blockburger v. United States*, 284 U.S. 284, 304 (1932); *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999). To make this assessment the Court must determine "whether Congress intended the same conduct to be punishable under separate statutory provisions." *United States v. Avelino*, 967 F.2d 815, 816 (2d Cir. 1992). "If the offenses charged are set forth in different statutes or in distinct sections of a statute, and each section unambiguously authorizes punishment for a violation of its terms, it is ordinarily to be inferred that Congress intended to authorize punishment under each provision." *United States v. Marrale*, 695 F.2d 658, 662 (2d Cir. 1982), *cert. denied*, 460 U.S. 1041 (1983); *United States v. Walsh*, 700 F.2d 846, 856 (2d Cir. 1983) ("[W]here Congress has made sufficiently clear its intention to impose multiple punishments for the same act, imposition of such punishment is constitutional.").

The VICAR murder counts and the drug-related murder counts are legally distinct under the *Blockburger* test. The VICAR murder counts arise from 18 U.S.C. § 1959(a)(1), which is a statute separate and apart from the drug-related murder statute, 21 U.S.C. § 848(e)(1)(A). Section 1959 is a racketeering statute, requiring the existence of an enterprise and that a defendant engage in racketeering activity in addition to committing a crime of violence. *See* § 1959(a) (prohibiting murder committed as consideration for "anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity"). On the other hand, § 848 is a continuing criminal enterprise ("CCE") statute prohibiting the obtaining of substantial income or resources by "occup[ying] a position of organizer, a supervisory position, or any other position of management in

11

a criminal enterprise" with "five or more persons" engaged in a "continuing series of violations" of the U.S. Code. *See* § 848(c). Although undoubtedly similar, the operative difference between the statutes is that VICAR murder seeks to punish predicate violence committed in furtherance of racketeering activities, whereas drug-related murder centers on a course of continued violence in concert with a criminal enterprise in which a defendant maintains a managerial role.

Moreover, while VICAR and RICO are not the same offense, the Supreme Court and Second Circuit's precedents discussing the RICO and the CCE statutes are instructive. For example, in *Garrett v. United States*, the Supreme Court held that "Congress intended CCE to be a separate offense and that it intended to permit prosecution for both the predicate offenses and the CCE offense," 471 U.S. 773, 786 (1985). Also, in *United States v. Walsh*, the Second Circuit pronounced that "[i]t is well settled that Congress sought to permit cumulative sentences for a RICO conviction and the predicate offenses upon which the RICO violation is premised," 700 F.2d at 856. And in *United States v. Concepcion*, the court held that the government may prosecute a defendant both under RICO for engaging in a pattern of racketeering activity and under § 1959 for violent crimes intended to maintain or increase the defendant's position in the RICO enterprise, 983 F.2d 369, 381 (2d Cir. 1992). Finally, in *United States v. Polanco*, the Second Circuit held that a court may impose consecutive sentences for a RICO conviction and substantive § 1959 convictions for murder and attempted murder, 145 F.3d 536, 542-43. Together, these holdings lead the Court to the conclusion that it may impose cumulative sentences for VICAR murder and drug-related murder pursuant to a continuing criminal enterprise even though they share the same predicate murders.

12

Thus, the VICAR murder counts and the drug-related murder counts are not the same offense under the *Blockburger* test, as each offense requires proof of elements not required for the other.

Likewise, Defendant's claim that punishment for both drug conspiracy under 21 U.S.C. § 846 and a drug-related murder under 21 U.S.C. § 848 violates the Double Jeopardy Clause is unavailing. (*See* Def.'s Mot. to Dismiss VICAR Counts at 28-29.) The specific drug conspiracy under § 846 charged here should not properly be viewed as a lesser-included offense of the § 848 murder because it also implicates another drug offense, § 841(a). Defendant argues that his offenses are analogous to *Rutledge v. United States*, 517 U.S. 292, 307 (1996). Specifically, he contends that the "holding that the 'in concert' element of a Continuing Criminal Enterprise (CCE) offense [§ 848] requires proof of a conspiracy that would also violate section 846, and the latter is a lesser included offense of section 848" supports his double jeopardy claim. (Def.'s Reply at 18.) In *Rutledge*, the defendant faced charges for two drug conspiracies arising under § 846 and the other under § 848. *Rutledge*, 517 U.S. at 307. The Supreme Court held that conspiracy under § 846 is a lesser included offense to § 848:

> Because § 846 does not require proof of any fact that is not also a part of the CCE offense, a straightforward application of the *Blockburger* test leads to the conclusion that conspiracy as defined in § 846 does not define a different offense from the CCE offense defined in § 848.

*Id.* at 300.

Here, the application is not so straightforward. First, the mere fact that the two offenses share the same "in concert" element is not the end of the inquiry, as *Blockburger* asks whether there are *any* additional elements in one offense not in the other. *Blockburger*, 284 U.S. at 304. Defendant's drug conspiracy conviction under § 846 (with § 841(a) as the predicate offense) does not require the existence of an enterprise in the same way that the conviction under § 848(e)(1) does. It is

13

conceivable, then, that the two offenses require different elements. As the Eighth Circuit explained it:

> Plainly, what is prohibited and punished by the statute defining a drug conspiracy offense is an agreement to commit drug-trafficking offenses, but what is prohibited and punished by the statute defining a drug conspiracy murder offense is the murder, albeit, a murder related to the drug-trafficking conspiracy. Thus, what the conspiracy murder offense punishes is a collateral "course of conduct" to the conduct at issue in the drug conspiracy offense, and the "greater offense" does not involve a "single course of conduct" shared with the "lesser offense."

*United States v. Honken*, 541 F.3d 1146, 1158 (8th Cir. 2008). The Court finds the Eighth Circuit's distinction between the two offenses persuasive.

Furthermore, Defendant's argument does not account for the fact that his drug-related murder offense under § 848 specifically provides for additional penalties under the section. *See* § 848(e)(1) (stating that the penalties listed are meant to be "in addition to the other penalties set forth in this section"). Therefore, it is likely that Congress intended for § 848(e)(1) to be punished cumulatively with other drug-related crimes. *See United States v. Collazo–Aponte*, 216 F.3d 163, 200 (1st Cir. 2000), *judgment vacated on other grounds*, 532 U.S. 1036 (2001) ("Congress intended to permit a defendant to be convicted and sentenced separately for murder under [21 U.S.C. §] 848(e)(1) and a predicate drug conspiracy punishable under 21 U.S.C. § 841(b)(1)(A)."); *United States v. McCullah*, 76 F.3d 1087, 1104-05 (10th Cir.1996) ("Congress has clearly expressed its intention that the § 848(e) punishment be cumulative with any other applicable punishment."); *United States v. Snow*, 48 F.3d 198, 200 (6th Cir. 1995) (concluding that § 848(e) stated a substantive violation separate from § 846); *United States v. Villarreal*, 963 F.2d 725, 728 (5th Cir. 1992) ("We are convinced that Congress created a substantive offense in 21 U.S.C. § 848(e)(1)(B) and that its 'language, structure, and . . . history . . . show in the plainest

way that Congress intended [it] to be a separate criminal offense which was punishable in addition to, and not as a substitute for, the predicate offenses.").

## III. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss VICAR Counts and Accompanying Mem. of Law [Doc. #1310] and Corrected Notice of Intent to Adopt Aquart's Pro Se "Defendant's Motion to Dismiss Original and All Superseding Indictments for Speedy Trial Violations and Due Process Concerns" [Doc. # 1314] are DENIED. Defendant's Motion for Resentencing on Count Eight and to Dismiss Counts Five, Six, and Seven and Accompanying Mem. of Law [Doc. # 1312] is DENIED as to Dismissal of Counts Five through Seven and GRANTED as to resentencing on Count Eight.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 18th day of October, 2021.